One case for this afternoon. United States v. Dominic Johnson. Mr. Kraus. May it please the court and good afternoon, your honors. My name is Ronald Kraus and I represent Dominic Johnson. I'd like to reserve three minutes for rebuttal. Done. The public's brief included four arguments. If the court will indulge me for one minute, I can streamline the process significantly because of developments in the law since this brief was filed a long time ago. And I wish to just assert those two arguments for issue preservation purposes. That would be the second argument in the brief relating to the second or subsequent 924C convictions. That argument is basically foreclosed by the Supreme Court's opinions in Diehl and Almendarez-Torres and unless there's some change there, he's out of luck on that issue. Also, argument three, which relates to the argument that armed bank robberies are not crimes of violence. This court's recent opinion in Wilson pretty much took care of that argument, but we never know what we'll have in the future, so we'll just preserve that. So I'd like to begin then with the issue that gave rise to this second supplemental briefing, which was the effect of this case on Wayne and then this court's unblocked decision in Lewis. I think perhaps the best way the court will allow me to do this, to illustrate the effect of Lewis and to focus that effect on what happened, is to contrast how two different decisions, one pre-Lewis and one post-Lewis, handled this sort of case. Excuse me, before you start, Lewis was a harmless error decision, this is a plain error decision. Yes. And is that going to, it seems to me that's a pretty large distinction between our situation and Lewis. Well it is, but I think if you'll follow my outline here, I think you'll see how I'm working that in, because I think Lewis, even though it was not a plain error case, still had a significant effect on plain error cases after it. Do you, Mr. Cross, I think what your brief, I think your brief agrees, but I ask you, do you agree that our review on the Elaine question is pursuant to plain error review? In this case, yes. And if it is pursuant to plain error, well, let me take a step back, under Lewis, since no objection was made and we're under plain error, doesn't that mean that we're dealing both with, reviewing both for sentencing error and trial error? I would say, well, yes. Right, I think Lewis is pretty clear on that, and if we're reviewing for both sentencing error and trial error, that would free us to look at the trial record and the evidence in the record of brandishing, which is pretty dramatic, isn't it? Well, I would disagree with that, Your Honor. If I could just go again back to pre-Lewis to discuss one case. Okay. This case of U.S. v. Stubbs. It was a non-presidential case. The facts are relatively simple. Stubbs was indicted for armed robbery under 2011-13 for carrying and using, which of course stipulates a five-year mandatory minimum. The jury convicted Stubbs of the robbery and also found him guilty of brandishing, which of course stipulates a seven-year mandatory minimum, and the court judge imposed a seven-year mandatory minimum. Stubbs' attorney did not object. On direct appeal, Stubbs argued that the brandishing sentence violated a lane because the indictment only stated carrying and using and didn't include the separate element of brandishing. The panel in that case said, well, the failure of the federal indictment to charge the element that increases the statutory minimum, that's in a lane error. In reviewing under plain error, this case may satisfy the first three prongs, but when you get to the fourth prong, it doesn't satisfy it. When you talk about seriously affecting fairness, integrity, public reputation. So how does that help you? It doesn't, in a sense. But it is interesting in terms of the evolution of rationale in Third Circuit cases. So let's fast forward from that to the Lewis-Ombach decision. Cus Lewis' fractured case totally is not entirely clear. And just as an aside, the issue of how to read a fractured opinion is set for argument in the Supreme Court in March. So we may see some changes in that. But everybody seemed to agree. Let me put it this way. There was a majority that were agreeing. Were they not? I mean, the plurality didn't address the issue, but the concurrence and the dissent seemed to agree that we were addressing sentencing and trial error, which you have agreed is sort of teed up here. So I'm not sure where you're going with this, because if it's the case that we're reviewing both those things, how does your client get out from under the substantial, the overwhelming evidence that there was brandishing in these cases? Well, what I would argue is that... Does it come down to the indictment? I'm sorry? Does it come down to the indictment? I mean, does the indictment charge or not charge brandishing? Let me take the position that it does not charge brandishing. That it's very much like the charge in Lewis. Go to the specific argument that your opponents make, as I understand it, that count five sweeps up count one, which talks specifically about Taylor's brandishing the weapon. And so count five meaningfully charges aiding and abetting Taylor's brandishing. The language in this case, in the indictment, is pretty similar to what the language was in Lewis, where there were overt acts consistent with brandishing that were set forth in a later count and incorporated by reference into the carry and use count. But there was nothing explicit in the carry and use count. Isn't one distinction at least the fact that in this indictment they used the word brandishing, whereas in the Lewis indictment they did not specifically use the word brandishing? That is a distinction, but the language was so, the acts alleged were so overtly in the nature of brandishing that I don't think it should make a difference. So are you saying it's not appropriate or you just can't incorporate by reference facts set forth in a previous count? I would take the position of not being able to incorporate by reference. Because when you do that, the government is asking, is really making a guess that the jury understood what this incorporation by reference was about. It's almost like you're having to guess that they could read the UCC with some intelligence by going from section to section. It says specifically, it says for the facts and I can read it to you. It says, you know, we're going to incorporate 1b and then paragraphs 8-17 or something like that. That's sort of the range that they're talking about in count 5. There's nothing hard about that. These are the facts. This is a factual background. And then Johnson was responsible for etc., etc., aiding and abetting. So why can't a jury understand that? I think it's subject to ambiguity and it takes so little effort for the government to put the word brandishing in the count. They ought to be required to do so. Granted, it's not perhaps the most elegant drafting, but the question is, is it legally sufficient? Is it legally sufficient to put your client on notice and to let the jury understand he's charged with aiding and abetting? Taylor jumping over a counter and brandishing a weapon. Well, I would argue just because of the fundamental importance of a defendant having notice of what precisely he's being charged with, that it should be explicit. If I can just briefly go back, Your Honor, to how Lewis, as you have described it, might have helped my case, I'd refer you to the case of United States v. La Prade. And in that case, the defendant was indicted for armed bank robbery under 2113 and for carrying and using a firearm during a crime of violence. The jury instructed and convicted him of carrying and using, but the district court judge imposed a 10-year sentence for discharge, which he admitted. On direct appeal, the issue was not raised. So the context of this case came up in a 2255 where the issue was, could this defendant demonstrate cause and prejudice to overcome procedural default? And what the panel decided was that, yes, there was cause as a result of Elaine overturning Harris, but actual prejudice was being subjected to 10 years erroneously. So with procedural default excused, Mr. La Prade is in essentially the same position as Mr. Johnson is here. How so? But this time... How so? Explain that. How does what happened in La Prade help your client? I don't want to be obtuse, but I'm not following it. Once a procedural default was excused, the issue that we have before us here, Johnson, on direct appeal is the same issue that was being raised by Mr. La Prade, which was the Elaine error. And in that case, what the panel said was under plain error review was that the cause and prejudice constitute a review that's actually a higher hurdle than plain error review, including the fourth prong, and that therefore there was no need to even go into that analysis, and cited Lewis in doing so saying, we take Lewis's invitation to decline the government's request that we go back and look at the trial record. If I could, just one final question. How do you get around on the plain? Maybe you just answered my question, but how do you get around cotton? Cotton, if you agree that brandishing was included in the indictment. Cotton really never reached the fourth prong of plain error. It only discussed the substantial effect, and in that case, it was not a complete analysis as Lewis was. Cotton expressly addressed the fourth prong. So even assuming substantial rights were affected, they did not seriously affect fairness, integrity, or public reputation. I'm sorry. Yes. It didn't affect the substantial. So the third point, I think it wrestled that to the ground. Yes. Okay. Tony? All right. Thanks, Mr. Krause. We'll have you back on the phone. Thank you. Mr. Zazman. Good afternoon, Your Honor. May I please support Robert Zazman on behalf of the government? There are two critical issues here when you look at Lewis and this whole basket of cases. One is, what's the standard of review? Is it plain error or harmless error? And the other key issue is, what type of error are we dealing with? The court in Lewis called it sentencing error versus trial error. I don't find the sentencing error label very helpful. I think it's really indictment error versus trial error. In other words, is the charge in the indictment or not? And then if it is in the indictment, what happened at trial? In these cases, of course, there was no resolution. Well, stick with the lingo we've used, though, because having a new label in there isn't going to help, I don't think. No problem. So we have sentencing error and trial error. We have plain error and harmless error review. It basically creates a little helpful chart with four boxes where you have the type of review on one axis, the type of error on the other axis. And there's only one box you can wind up in where there's relief, and that's Lewis. And that's where you have sentencing error, the element was not charged in the indictment, and you're on harmless error review. If you wind up in any of the other three boxes, a deal prevails. And here, Mr. Johnson fails on both of these prongs because we have the acknowledgement that it's plain error review. Once it's plain error review, sentencing error does not get him relief under Cotton. And trial error does not get him relief under Vasquez, this court's in-bank decision. So it all plays out in a very straightforward way. Well, help us out first with the question of whether we're on sentencing error or sentencing error and trial error review here. And that turns on whether it's charged in the indictment, right? Right. So why don't you meet Mr. Krause's argument that he just, you know, the government didn't know how to charge stuff, and they didn't do it. They're trying to, I take his argument to be more politely put than this, that the government is trying after the fact to correct its bad drafting of an indictment where it failed to charge brandishing, and now it wants to bootstrap some vague language from an earlier count into count five, and so recover what it gave away by not drafting correctly in the first instance. And the overt acts weren't sufficient. Sure. So first let's just start with honesty. Of course, when the government created this indictment, it wasn't thinking of charging brandishing, and the reason it wasn't is because it wasn't required to under a Supreme Court precedent. The Harris case was in effect, and so I'm sure that the AUSA who wrote this indictment is not saying, I need to make sure to charge brandishing. But what happens in these cases after a lane is decided is we look back and we see what was charged, and it so happens that the word brandish literally was used in the indictment. In the Lewis case it was not. Now Judge Fischer took us to task for that in his dissent, and it's my responsibility. I made the call. I thought that the word was not in the indictment in Lewis, and therefore it had not explicitly been charged, even though you could certainly read that indictment to make it pretty obvious that these men were pointing guns at people when they invited the house in Lewis. But here, the word brandish is right there. It's explicitly incorporated. The Supreme Court has said for more than 100 years that you can draft an indictment this way, starting with the Crane case in 1896, that you can incorporate facts into another part of the indictment. Rule 7 requires a plain statement of the facts, and that's what you have here. So it turns out, we look at this indictment, and brandishing was charged. There is no sentencing error here, as that was described in Lewis. Once you get past that, this also falls into place. Now I should say, before I move on to trial error, even if there is sentencing error, Mr. Johnson still does not get relief because that's the Coffin case. Coffin's right on point. The drug quantity is not charged in that indictment. Same excuse. It was drafted before apprending. Nobody knew they had to do it. And so drug quantity is not there. The judge makes the finding of sentencing. People in that case were sentenced to life on far above the 20-year maximum that applied without the drug quantity allegation. Supreme Court says plain error review, absence of the allegation from the indictment, and under the Fourth Promise, Your Honor correctly noted, under the Fourth Promise would not offend the federal jurisprudence. In fact, the Supreme Court says just the opposite. It would offend our senses if somebody were not subject to the full penalty they're liable to under the facts based on an unpreserved error. So Coffin is right on point even if we have sentencing error here. And here I do have to mention the LaPrade case. My friend, Mr. Krause, was good enough to e-mail me yesterday and bring this to my attention. It's not cited in LaPrade's briefs. The site, if the court doesn't have it, is 673 Federal Appendix 198. This, of course, is a non-presidential decision. It's offered by Judge Stureka, and Judge Shorten was on the panel. And I think, Mr. Krause, that's a point that you could read, at least as to the sentencing error part of it. It's hard to reconcile the LaPrade decision with Cotton. And I would respectfully say that LaPrade, a non-presidential decision, is not correctly decided. It's not clear in LaPrade. The court never really finally says was this sentencing error or trial error. But it exchanges the defendant, if it's sentencing error, for reaching the fourth prong of plain error review because this was on a 2255 under the cause and prejudice standard. I don't think that's – it's hard to make sense of that, that somebody would do better on a 2255 than they do on direct appeal, where they have to meet all the prongs of plain error review. Now, even if a prod is there, of course, it's not controlling. But we still get to the fact that we're on direct appeal here. This case is Cotton. It's on all fours. And then we get to the trial error part. With respect to trial error, same thing. There's a jury result. We don't get to any of that, though, if we agree with you that brandishing was sufficiently charged, right? Correct. Exactly. And then all we're left with is the trial error. No question this jury wasn't asked to find brandishing. That is the Supreme Court's Johnson decision in 1997. We don't have too many cases named Johnson that we're dealing with. The Nader decision on the harmless error review, the Vasquez decision of this court, they're all about trial error, which is you didn't charge the fact that it increases the maximum or the minimum. The evidence is overwhelming and undisputed, and that takes care of that. So if I didn't have to pick one of those boxes that I talked about on that grid, we are here in the trial error, plain error review box. And that box, trial error, plain error review, that is Johnson 1997. That's the Supreme Court case that's identical to this one. Now, speaking of a bunch of Johnson cases, there's the Johnson, we'll call it ACA Johnson to distinguish it, the one that said the residual clause is unconstitutionally vague. Your opponent has raised an argument under that and an argument under Roseman, and you've taken the position that those are forfeited. But you've also taken the position that, if I understand it correctly, that the reason they should be viewed as forfeited is because they weren't raised by the pro se defendant, Mr. Johnson himself, in the first filing. Is that right? No, that's not it. They were waived for a couple reasons. They were waived because they weren't presented on direct appeal by counsel. Mr. Johnson was represented by counsel in the appeal. It was only later, after Elaine, that he filed a pro se brief, which is no longer on the table. The second reason is it's beyond the scope of the Supreme Court's mandate. Leave the scope of the mandate part aside for a second. I do want to ask you about that. Just stick with forfeiture. All right. These things were post-Johnson, not raised in the first round by the pro se defendant, but later raised by Mr. Krause. I thought there was an argument made in your brief that, look, he didn't raise it in his pro se brief, so it's got to be forfeited. Did I read that wrong? We've always stated it wrong, but that's not our position. So I apologize if it wasn't clear. What about a case that, particularly Johnson and Rosemont, decided while this Johnson case, Dominic Johnson, is on direct appeal, Shiro v. Summerlin, which is cited in Mr. Krause's brief, that says that a new rule announced applies for all criminal cases that are pending on direct appeal. Why wouldn't that apply here? It doesn't overcome the labor issue. Sure, but the issue still has to be preserved along the way. We are so far down the road. But I should say, there is a route for Mr. Johnson to raise his ACA Johnson claim, if it had any merit, under 2255. There's no question that you can file a timely ACA Johnson. That's what Walsh says. Why does he have to do that, given the Shiro decision, which does say exactly what Judge Fischer said. It's pending on direct appeal still. It's new rules, but they're applicable. Well, you still have to make the argument in a timely way. That just means you've got plenty of review, right? It doesn't mean the argument's forfeit. Right. I'm not pushing very hard on this, because there are routes for Mr. Johnson to raise this claim. His claim that bank robbery is not a crime of violence under 924C, which is the Johnson ACA claim here, has been rejected by this court in two different ways, in the Robinson case and in the Wilson case, as Mr. Krause has acknowledged. And obviously, if he could raise it, plain air review would still apply, and he's got the hurdles of plain air review. The buy, as well as the merits. Correct, and it's been defeated on ordinary review in this court. So that, again, is why I'm not pushing too hard. The thing is, you wind up arguing jurisprudential principles that apply to different baskets, but, of course, there is a route to present a Johnson ACA claim. It just has no merit here. And the Rosenman case, how would it deal with that? The intent issue and the jury charge. Right. So if I'm being faithful to the waiver principles that this court has stated, that was waived. There was never a challenge to the jury instructions, which is what Mr. Krause has now presented. And there's no new law on this, either. We're still dealing with the Rosenman case. So we're dealing with the same thing when you say it's waived, but we're right back to Sherrill. It's new law. It's still under review. It's still on appeal. So why isn't, you know, I'm not sure how it helps you to reach back to that. What does Sherrill mean if it doesn't mean, hey, if there's new law, you get to rely on it? There's new law. He's relying on it. How is he not permitted to do that? How is it waived? Well, as I read, again, the court's precedent, Rosenman's announced in 2014, and the issue has been presented now in this very long-pending direct appeal in 2017 for the first time after a Supreme Court remand limited to the Elaine issue. Different issue, right? The scope of the remand is a different issue. I'm just trying to get you to stick on the waiver thing because it sounds to me like you're trying to say if we're being faithful to the rules, it's waived. And I'm not following that. I think if we're being faithful to the Supreme Court precedent, it's probably not waived. It's new law. Sherrill seems to say new law applies if it's still on direct appeal. That's where we are. Why can't he rely on it? I believe, Your Honor, and we have not fully briefed this, but I believe there are two things at play. One is, how do you preserve the issue? And the second is, does this new case apply to you, which is what Sherrill is dealing with? So you could have a newly announced retroactive decision, but if you never make the argument in the district court around direct appeal, then you're in plain error, but it doesn't mean you forfeit it. Well, this court has said over and over that if you don't raise an issue in your opening brief, this court calls it a waiver, not a... But that's Sherrill. He's talking in a circle. I'd have to go back and review Sherrill again. I'm just saying what my understanding is standing here of this court's waiver decision. Okay. It kind of has the feel to me, at least, that maybe Sherrill is applicable here, and we're on plain error with you, but he's probably allowed to raise the thing. And if he's allowed to raise it, how do you address it? Take it on the merits. Sure. And let me also just say, as I address the merits, that, as Your Honor knows, the government is very, especially in this circuit, very freely waives a waiver when we believe that there is a meritorious issue that should be addressed. So I don't think I would have even put this in my brief if not for the fact there is nothing meritorious here under Roseman. Roseman says that to prove aiding and abetting a 924C, you have to participate in the underlying crime. You have to aid and abet the underlying crime, being the robbery, and know that the other person has a gun and that's how this thing is going to be accomplished. You don't have to particularly aid and abet the possession and use of the gun, just the underlying offense. That's what Roseman says. No, when there's a temporal aspect. Correct. You have to know it before the crime takes place. The Supreme Court allows that if you're in the middle of the crime and you see the person has a gun and you keep going along with it, you can infer that the person knew in advance, which is what's required. They knew this was going to be an armed robbery, not just a robbery, right? Exactly. Now, on the facts, the reason I think they're focused on the jury instructions is that on the facts in this case, there's no question Johnson supplied the gun. He bought the gun. He gave it to each of these three different guys who went in and robbed banks for him. So what they say is the jury instructions were not sufficient, but the jury instructions in Related Saddam Harif actually required more than Roseman requires. If you read the jury instructions logically, the court did instruct the jury that the person has to aid and abet the offense. Don't you win on the fourth prong anyway? Oh, sure. No matter, like, forget the jury instructions. The record drips here with evidence that he bought the gun, he gave him the gun, he told him how to jump the counter and brandish it, et cetera. So are we in cotton land and don't have to worry about that? Yeah. This actually doesn't work on the third prong either. He'd have to, for a jury instruction error, he'd have to show that there's a reasonable probability that the jury would have reached a different result had it been told, had it been read Roseman explicitly. Now, obviously, that's not the case here either. Okay. All right. Thanks very much, Mr. Johnson. Mr. Krause, your vote, please. Thank you, Your Honor. Well, I'd just like to, again, assert my great respect for the LaCroix decision and say that it would be extremely anomalous for someone bringing a 2255 action to end up with a better result than someone bringing a case in direct review. And I think the same result should apply. Let me ask you what I asked Mr. Zosmer. If, in fact, we read the indictment to say, oh, it's not great, it's sufficient to charge brandishing, all that discussion is by the board, right? Yes. It's just academic. Yes. Okay. Briefly on Rosemond, the significance of the indictment leaving out the advanced knowledge component goes very much directly to the fourth prong because if that had been part of the indictment, the defense could have been presented very differently. In this case, yes, he gave a gun, but he didn't necessarily know that he was going to use it in the robbery. If the advanced knowledge was ---- Hold on a second, Mr. Krause. He had been the guy solo using a gun before. He gets the gun for the other people. In essence, he's the sensei. He's the master of our bank robbery. Here's the gun. Here's how you jump the counter. Here's how you wave it around and call people obscene names while you're threatening them. That seems like an extraordinarily weak ground for you to get on. You're arguing that his substantial rights were affected in the light of this record? Well, that comes up because the defense had no foreknowledge that his advanced knowledge was going to be an element of the case. If they did, it's possible that if the defense knew that the Rosemond standard applied, that there could have been the cross-examinations of these cooperating witnesses and this could have been the long lines. Johnson may have given you a gun, but didn't he tell you not to bring it into the bank? And didn't you hide the gun from Mr. Johnson when you went into the bank? Did you tell Johnson that you would not bring the gun into the bank? And, of course, you'd have to have a good faith basis to ask any of those questions, and there's nothing in this record that indicates that any of those things were true, right? Isn't the record completely to the contrary? Well, that's true because the defense never considered raising that knowledge or investigating for such information. Okay. All right. Thanks very much, Mr. Krause. Thank you, Mr. Zosmer. This case has been around for a long time, and I know that Mr. Johnson and the government would both like to have it put to rest. So would we. We'll endeavor to get that done promptly. Appreciate the arguments today. We've got the matter under advisement.